**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MICHELLE M.**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **25-CV-00445-HKS** |
| **v.** | | |

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## DECISION AND ORDER

  As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND[1]

  On April 20, 2020, plaintiff, at the age of 41, protectively filed a claim for disability insurance benefits ("DIB"), alleging an onset date of February 11, 2020. Dkt. #3, pp. 402-403.[2]

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] Plaintiff had an earlier disability claim pursuant to which she was found disabled for a closed period from April 16, 2018 to September 19, 2019. Dkt. #3, pp. 129-143. The ALJ's decision on that claim was issued on February 10, 2020. Dkt. #3, pp. 133-143. In it, the ALJ found that medical improvement had occurred such that plaintiff was not disabled from September 20, 2019 to the date of the decision. Dkt. #3, pp. 140-142. Plaintiff's alleged onset date for the claim now before the Court is the day after the 2020 decision.

In a Disability Report filed on September 3, 2020, plaintiff alleged she was disabled due to neck pain, back pain, shoulder pain, headaches, depression, and anxiety. Dkt. #3, p. 436.

Plaintiff's claim was denied initially and on reconsideration. Dkt. #3, pp. 233-244, 246-257. Plaintiff requested a hearing, and a video hearing before Administrative Law Judge ("ALJ") Dina Loewy was held on December 9, 2021. Dkt. #3, pp. 91-128.

The ALJ issued an unfavorable decision on October 26, 2022, Dkt. #3, pp. 184-208, and plaintiff requested review by the Appeals Council. On August 25, 2023, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings. Dkt. #3, pp. 209-214.[3]

On remand, a video/telephonic hearing was held on April 15, 2024 before ALJ Anna Wright. Dkt. #3, pp. 41-75. Plaintiff appeared with counsel.

Upon examination by her counsel, plaintiff testified that she had not worked, attended school, or done any vocational training since 2020. Dkt. #3, p. 47. Counsel asked plaintiff what she thought were the biggest obstacles keeping her from working, and plaintiff stated anxiety and migraines. Dkt. #3, p. 48.

---

[3] The Appeals Council found that the ALJ had violated a Social Security Administration ("SSA") procedural requirement by adding, post-hearing, medical records (Exh. B24F) to the administrative record without proffering them to plaintiff for comment or waiver. Dkt. #3, pp. 211-212. *See* HA 01270.001, Posthearing Evidence – When Proffer is Required, https://secure.ssa.gov/apps10/poms.nsf/lnx/2501270001 (last visited June 25, 2026).

As to her migraines, plaintiff testified that they are debilitating and cause her severe nausea, head and neck pain, and she is sensitive to light, smells, and certain foods. *Id.* Plaintiff testified that she experiences migraines about three times a week; they usually last the whole day; and she rated them eight or nine out of ten in terms of pain. *Id.*

Plaintiff testified that she takes daily medication for the migraines and has done trigger point injections, nerve blocks, Botox, onsite medications and, until recently, infusions at Dent Neurologic. *Id.* Many things can trigger the migraines, including weather, stress, smells, and foods. Dkt. #3, pp. 48-49. When a headache occurs, she needs to lie down in a dark room and use ice, cold, or heat. Dkt. #3, p. 49. She is unable to perform any activities while having a migraine. *Id.*

Plaintiff also testified that the migraines had gotten progressively worse over the last couple of years, although her doctor is trying some new treatments, which have brought the migraines to an average of three per week. *Id.*

Next, plaintiff's counsel asked her about her anxiety and observed that plaintiff's hands were trembling. Dkt. #3, p. 50. Plaintiff stated that her anxiety was debilitating and that it affected her husband and kids. *Id.* Plaintiff testified that she constantly needs to know what her kids are doing and where they are, and her 19-year old daughter moved out because of these issues. *Id.* She also testified that she had a

panic attack that morning because she had to have her husband's best friend take her son to school, and she could not find her son's location. Dkt. #3, p. 51.

Plaintiff testified that when she has a panic attack, she has a "complete meltdown," cries, has heart palpitations, and she is hot, cold, and paces. Dkt. #3, p. 52. She testified that she is afraid to go a lot of places because of fear of shootings or that other things are going to happen, and when it is bad, she needs her husband or a friend to drive her. *Id.* On average, she can go into a store by herself about once a week. *Id.* She has a couple of good friends but does not usually do anything socially. Dkt. #3, p. 53.

Next, plaintiff testified that she has also been diagnosed with bipolar disorder and depression, and she experiences severe highs and lows. *Id.* One minute she can be fine and the next she wants to fight or take it out on someone. Dkt. #3, p. 54. She "barks" at her husband a lot and wants to cause conflict when they are in public. *Id.*

Plaintiff next testified that she wakes up frequently at night to check on her son—if she cannot see him on the camera they have, she has to go in his room to check on him. Dkt. #3, p. 55. She gets 4-5 hours of sleep a night, which makes her headaches worse. *Id.*

Plaintiff also testified that she has neck and back pain for which she gets monthly pain shots. Dkt. #3, p. 56. She also has pain and swelling in her ankles, as well

as pain in other parts of her body, which varies in intensity. *Id.* She also has ongoing low back pain due to past car accidents for which she takes medications, and she has sciatic pain which radiates into her left buttock. Dkt. #3, p. 57. She gets bad knots in the back of her skull which go down to her shoulder blades. *Id.*

For her neck and back pain, plaintiff has tried massage, Lidocaine patches, Toradol shots, heat and light therapy, and ice packs. Dkt. #3, p. 58. She also has numbness in her hands which causes her to drop things. *Id.*

Plaintiff's counsel asked plaintiff about her average day, and plaintiff stated that she takes her son to school if her husband is working. It scares her to be alone in the house, so she visits with her dad, aunt, or friend. *Id.* She picks her son up from school in the afternoon but signs him out from the office rather than allowing him to come out at dismissal time. Dkt. #3, p. 59.

In the evenings, she and her husband and son have family time, and her son takes martial arts classes but she cannot watch him because she is afraid he is going to get hurt. *Id.* If her husband is working at night, she has her dad or daughter come stay with her. Dkt. #3, p. 60.

Plaintiff stated that her doctor has prescribed medicine for her anxiety, and she talks to her friends and pastor, but sometimes she cannot work through it. *Id.* Her anxiety has gotten progressively worse. *Id.*

~ 5 ~

Plaintiff testified that she watches television, but she has trouble focusing on the content, and she does not read. Dkt. #3, p. 61. She enjoys online shopping, but her husband took her credit cards away because of the spending. *Id.*

Upon examination by the ALJ, plaintiff testified that she takes a combined medication, Buspirone, for her anxiety and depression. Dkt. #3, p. 62. The ALJ asked plaintiff if there was anything else she wanted to tell her, and plaintiff said no. *Id.*

The ALJ then heard from Christine Spaulding, a vocational expert ("VE"). Dkt. #3, p. 63. The ALJ asked the VE to assume a hypothetical person with plaintiff's vocational profile who is limited to sedentary work and who can occasionally climb ramps and stairs and stoop; never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; frequently reach at shoulder height and below, handle, and finger; occasionally reach overhead on the right side; tolerate moderate noise and moderate indoor lighting; and tolerate occasional respiratory irritants. Dkt. #3, p. 64. Further, the person needs a sit/stand option such that after standing or walking for 15 minutes, she can sit for three minutes while on task and then resume standing or walking. *Id.* Also, after being seated for 30 minutes, she would need to stand for three minutes before resuming sitting, all while remaining on task. *Id.*

Furthermore, the ALJ asked the VE to assume that the person could understand and carry out simple workplace instructions and make simple work-related

~ 6 ~

decisions; complete one and two-step tasks throughout the day; and she would not be able to perform at a production pace, such as on an assembly line, but she could meet production quotas. Dkt. #3, p. 65.

The VE testified that, under this hypothetical, there would be no jobs in the national economy that the person could perform. Dkt. #3, p. 66.

Next, the ALJ asked the VE what the document preparer job requires. The VE testified that while the Dictionary of Occupational Titles ("DOT") states that the document preparer position has a reasoning level of 3, she believes it is more a level of 2 due to technology changes in the current labor markets. *Id.* The VE also stated that the document preparer job requires more than one or two steps, but it could be performed if the individual could perform four-step tasks. *Id.* The VE testified that, with the four-step limitation, the person could also perform the sedentary jobs of sorter and addresser. Dkt. #3, pp. 66-67.

The VE further testified that, due to changes in technology, the jobs of document preparer and addresser are now performed differently and more easily than as described in the DOT. Dkt. #3, p. 67. The VE stated that her testimony was based on her professional experience. *Id.*

Upon examination by plaintiff's counsel, the VE testified that the jobs of document preparer, sorter, and addresser all require frequent reaching. Dkt. #3, p. 68.

~ 7 ~

The VE also testified that, based on her professional experience and training, these jobs would not require more than occasional overhead reaching and, if they did, the hypothetical person could do it with her left upper extremity. Dkt. #3, p. 69. Further, the VE stated that these jobs can be performed either standing or sitting. *Id.*

Plaintiff's counsel asked the VE when she had observed these jobs performed, and the VE testified that she had last observed the document preparer job five or six years previously and the sorter and addresser jobs approximately six to seven years ago. Dkt. #3, p. 70.

Plaintiff's counsel next asked the VE about limitations in the person's ability to move her head. The VE testified that if the person could only "occasionally" move her head in any direction—which would be up to a third of the workday—she would not be able to perform these three jobs. Dkt. #3, p. 71.

Next, the VE testified that the tolerance for off-task time in these three jobs is no more than 10%, and the tolerance for absenteeism is no more than one full-day absence per month. *Id.* The VE also stated that some employers treat tardiness or leaving early the same as an absence, while others would institute a progressive discipline process for such occurrences. *Id.*

Plaintiff's counsel then asked the VE how often these three jobs required the employee to interact with the public, co-workers, and supervisors. The VE stated that

these jobs require no contact with the public and no more than occasional contact with co-workers or supervisors. *Id.*

Next, plaintiff's counsel asked the VE to assume that the person could not control her emotions for 10% of the workday and might exhibit behavior such as crying, being irritable, or lashing out verbally. Dkt. #3, p. 72. The VE testified that if the person could step away from her workstation to compose herself within off-task limits, this would not keep her from performing the three jobs in question. *Id.* However, the VE stated that if the behavior was outside the off-task limit or created distractions for other employees, a progressive disciplinary process would likely be instituted and a failure to correct the behavior could be grounds for termination. Dkt. #3, 72-73. Also, a single incident of lashing out or speaking aggressively could be grounds for immediate termination. Dkt. #3, p. 73.

On June 28, 2024, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #3, pp. 21-40. The Appeals Council denied plaintiff's request for review, Dkt. #3, pp. 7-13, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is

unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff has not engaged in substantial gainful activity since February 11, 2020, the alleged onset date; (2) plaintiff has the severe impairments of obesity; right shoulder rotator cuff tear status post subacromial decompression with distal clavicle excision; cervical and lumbar degenerative disc disease; migraine headaches with bilateral occipital neuralgia; bipolar disorder; post-traumatic stress disorder (PTSD); and generalized anxiety disorder;  (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform sedentary work[4] except she can occasionally climb ramps and stairs and stoop; can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; can frequently reach shoulder height and below, handle, and finger; can occasionally reach overhead on the right side; can frequently reach overhead with the left side; and can tolerate moderate noise and moderate indoor lighting and occasional respiratory irritants. Further, after standing or walking for 15 minutes, she must sit for 3 minutes while on task and then resume standing or walking if

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

need be. After sitting for 30 minutes, she must stand for 3 minutes while on task before sitting again if need be. She can understand and carry out simple workplace instructions and make simple work-related decisions. She can complete tasks of up to four steps throughout the day, and she could meet a production quota but would not be able to perform at a production pace like on an assembly line; (5) a finding regarding plaintiff's past relevant work is not material; (6) considering plaintiff's age, education, work experience, and RFC, she can perform jobs in the national economy of document preparer, sorter, and addresser; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from February 11, 2020, to the date of the ALJ's decision. Dkt. #3, pp. 27-33.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**Challenges to the ALJ's Decision**[5]

Plaintiff makes four challenges to the ALJ's decision: (1) the ALJ did not properly consider the limiting effects of plaintiff's migraine headaches; (2) the ALJ

---

[5] In her decision, the ALJ expressly incorporated the analysis contained in the October 2022 hearing decision. Dkt. #3, pp. 30-32.

improperly dismissed plaintiff's subjective complaints by mischaracterizing the level of her activities; (3) the RFC fails to address all of plaintiff's mental health limitations with respect to functioning in a work setting; and (4) there is not substantial evidence that there are jobs in significant numbers in the national economy that plaintiff can perform.

### *Migraine Headaches/Subjective Complaints*

Upon review of the parties' briefs, the Court concludes that plaintiff's first two arguments overlap, and the Court will thus analyze them together.

Plaintiff argues that the ALJ did not properly consider the limiting effects of her migraine headaches, asserting that the ALJ engaged in "no analysis" of plaintiff's migraine treatment history. Dkt. #8-1, p. 19. This argument is not supported by the record.

First, this argument ignores the fact that the ALJ, in formulating the RFC, expressly incorporated the medical evidence analysis contained in the October 2022 decision. Dkt. #3, p. 30. From an administrative efficiency standpoint, this approach makes sense, and plaintiff assigns no error to it.[6]

The October 2022 decision extensively discussed plaintiff's history of migraines and the numerous treatments she received for them, including medical records

---

[6] In addition, the remand of this matter from the Appeals Council was not merit-based. Rather, the Appeals Council remanded due to a procedural error—the previous ALJ failed to proffer to plaintiff medical records added to the record post-hearing—and not on the basis of the ALJ's analysis. Dkt. #3, pp. 211-212. Plaintiff's characterization of the October 2022 decision as "vacated," Dkt. #8-1, p. 18, while technically accurate, is thus somewhat misleading.

from 2020 and 2021 in which plaintiff reported that her headaches had improved; a medication called Aimovig helped with her headaches and they had "significantly decreased in frequency and intensity; she responded "extremely well" to occipital nerve blocks and was "very happy" with them; and her doctor wrote a standing order for regular infusions to prevent the migraines. Dkt. #3, pp. 12-13 (citing Dkt. #3, pp. 689, 851, 941, 1029, 1031).

Further, the ALJ considered plaintiff's subjective complaints in the 2024 decision: she recounted plaintiff's hearing testimony that she experienced migraines on average three days a week, lasting 8-9 hours each, and that they caused nausea and sensitivity to sound, light, and foods. Dkt. #3, p. 30.

The ALJ noted, however, that more recent medical records reflected that trigger point injections had decreased plaintiff's headache frequency and cervicalgia. Dkt. #3, p. 30 (citing Dkt. #5, p. 109). She noted that, although neurological records reflected that tapping and palpation over plaintiff's occipital area briefly reproduced the typical pattern of headache pain, the record also stated that plaintiff responded well to occipital nerve blocks. Dkt. #3, p. 30 (citing Dkt. #3, p. 1041).

The ALJ also cited treatment records from 2023 and 2024 which, in accord with earlier records, stated that the trigger point injections had decreased the frequency of plaintiff's migraines and headache symptoms. Dkt. #3, p. 30 (citing Dkt. #5, pp. 102, 104, 109).

The ALJ thus concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms were "not consistent with the medical evidence and other evidence in the record." Dkt. #3, pp. 30-31.

In support of this determination, the ALJ relied not only on medical records, but also on evidence regarding plaintiff's reports of her activities. Plaintiff argues that the ALJ improperly mischaracterized this evidence in order to reject plaintiff's subjective complaints. Dkt. #8-1, pp. 21-23. The Court disagrees.

In concluding that plaintiff's "reports of activities suggest greater capacity than alleged," the ALJ cited to records in which plaintiff reported that, between 2021 and 2022, her basement had flooded which required "extensive cleaning"; she exercised six days a week for 60 minutes at a time; and she engaged in moderate walking a couple of times a week in an effort to lose weight.  Dkt. #3, p. 31 (citing Dkt. #4, pp. 2, 710[7], 733; Dkt. #5, p. 20).

The ALJ also incorporated by reference the analysis of the medical opinions contained in the October 2022 decision, Dkt. #3, pp. 31-32, which includes the December 2020 report of Dr. Todd Deneen, who conducted a consultative psychiatric examination of plaintiff. Dkt. #3, pp. 765-768. Dr. Deneen noted that plaintiff reported that she could dress and shower on a regular basis; she cooked, cleaned, did laundry, and shopped as needed unless she was having a bad day, in which case her family helped her; she has

---

[7] The ALJ cited to the page before this record which appears to be a typographical error.

a driver's license and drives; and she spends most days spending time with her children. Dkt. #3, p. 767.

"It is well-settled that while the ALJ is required to consider Plaintiff's subjective complaints, the ALJ is not required to grant disability benefits based on subjective complaints alone, particularly when those subjective complaints are contradicted by other evidence in the record." *Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp.3d 248, 255 (W.D.N.Y. 2024) (citation omitted).

Furthermore, it is appropriate for an ALJ to consider a claimant's daily activities when evaluating her subjective complaints. *Dorcas L. v. Comm'r of Soc. Sec.*, 8:25-CV-625 (DJS), 2026 WL 1492820, at *11 (N.D.N.Y. May 28, 2026).

While plaintiff argues that the record also contains evidence which supports her subjective testimony, "it is within the ALJ's discretion to resolve genuine conflicts in the evidence." *Racquel K. v. Comm'r of Soc. Sec.*, 25-CV-00108-MJR, 2026 WL 1326318, at *3 (W.D.N.Y. May 13, 2026) (citations omitted). *See also Charles B. v. Comm'r of Soc. Sec.* 8:24-CV-01232 (ML), 2025 WL 2816893, at *8 (N.D.N.Y. Sept. 26, 2025) ("Recognizing that a claimant's subjective description of his symptoms cannot establish disability by itself, and that a reviewing court must give great deference to the ALJ's assessment of hearing testimony, this Court finds that the ALJ marshaled substantial evidence to support his conclusions in this area, and reasonably credited or discounted Plaintiff's subjective complaints against the broader medical record.").

~ 17 ~

In *Selena A. C. v. Comm'r of Soc. Sec.*, Case # 24-CV-6203-FPG, 2026 WL 570461 (W.D.N.Y. Mar. 2, 2026), this Court recently considered a plaintiff's claim that an ALJ erred by finding her not disabled due to, *inter alia*, the severe impairment of migraine headaches. The Court rejected plaintiff's argument that the ALJ erred by concluding that her subjective statements were not entirely consistent with the medical and other evidence:

> Here, the ALJ did consider Plaintiff's limitations resulting from her migraine headaches, including repeated complaints of migraines and sensitivity to loud noises and light. . . . Nevertheless, based on other evidence in the record, the ALJ found that Plaintiff's migraines improved over time or were alleviated with medication, . . ., and restricted her to work with quiet noise environments. . . . Accordingly, Plaintiff's argument that the ALJ failed to consider limitations arising from her headaches lacks merit, and remand is not warranted on this ground.

*Id.* at *6.

The Court concludes that this reasoning applies equally here, and remand is not warranted based upon plaintiff's first two arguments.

### *Mental Health Limitations*

Plaintiff next argues that the RFC formulated by the ALJ fails to address all of plaintiff's mental health limitations with respect to functioning in a work setting. Dkt. #8-1, pp. 23-24. Specifically, plaintiff argues that the RFC does not square with the ALJ's

finding that plaintiff had a "moderate" limitation in the area of adapting or managing oneself. *Id.* This argument is without merit.

The restrictive RFC crafted by the ALJ limited plaintiff to understanding and carrying out simple workplace instructions and making simple work-related decisions, and it included that she could not perform at a production pace. Dkt. #3, p. 29.

The area of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Jessica P. v. Comm'r of Soc. Sec.*, 6:22-cv-6238-JJM, 2025 WL 428416, at *3 (W.D.N.Y. Feb. 7, 2025) (citation omitted).

"Generally, an RFC that limits plaintiff to unskilled work with modest restrictions has been held to adequately account for up-to-moderate mental limitations." *Id.* at *4 (collecting cases).

The ALJ thus adequately accounted for plaintiff's moderate limitation in this area by restricting her to simple, unskilled work. *Id.*

Moreover, the ALJ noted that the record contained conflicting evidence about plaintiff's functioning in this area, but "in an abundance of caution and giving full credit to the claimant's testimony," she nonetheless found plaintiff moderately limited. Dkt. #3, p. 29. *See Deborah Elaine L. v. Comm'r of Soc. Sec.*, 6:20-CV-06607 EAW, 2022 WL

2662974, at *4 (W.D.N.Y. July 11, 2022) ("It further was not error for the ALJ to afford Plaintiff the benefit of the doubt and assess additional non-exertional limitations.").

For these reasons, the Court concludes that the ALJ did not err in this aspect of the RFC.

### *Step-Five Determination*

Plaintiff's final argument is that there is not substantial evidence that there are jobs in significant numbers that she can perform. Dkt. #8-1, pp. 24-27.

At step five of the sequential analysis, the ALJ concluded that plaintiff could perform the jobs of document preparer, sorter, and addresser. Dkt. #3, p. 33.

Plaintiff argues that the ALJ failed to comply with heightened evidentiary and articulation requirements imposed by the SSA regarding certain occupations whose continued existence and/or requirements have been called into question due to changes in technology or processes, including the jobs of document preparer and addresser.

However, the Court need not wade into these waters as plaintiff does not challenge the ALJ's determination that plaintiff could perform the job of sorter, which represents approximately 35,000 jobs nationally. Dkt. #3, p. 33.

It is well established that the ALJ "need show only one job existing in the national economy that [Plaintiff] can perform." *Dorcas*, 2026 WL 1492820, at *12 (citations and internal quotation marks omitted).

Furthermore, while no Social Security regulation or ruling defines "significant number" for purposes of the step-five analysis, "[c]ourts have held that numbers varying from 9,000 upwards constituted 'significant.'" *Angi W. v. Comm'r of Soc. Sec.*, 21-CV-0557 (CJS), 2023 WL 2595008, at *11 n.8 (W.D.N.Y. Mar. 22, 2023) (finding that 22,494 charge account clerk jobs in national economy was "significant number") (citations omitted).

For these reasons, the Court concludes that remand is not warranted on this basis.

In sum, the Court concludes that the ALJ's decision was supported by substantial evidence and that the Commissioner's determination must be upheld.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #10) is granted.

The Clerk of Court is directed to close this case.

~ 21 ~

**SO ORDERED.**

DATED:      Buffalo, New York

            June 26, 2026


                                          s/ H. Kenneth Schroeder, Jr.
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**